Judge Rowan
delivered the opinion of the court.
Jane Breckenridge, executrix and devisee of Alexander Breckenridge deceased, alledged in her bill in chancery, that during four years, viz. from the year 1783 to the year 1787, inclusive, a certain Samuel Bell since deceased, became indebted lo her testator in the sum of fifty odd pounds, and upon settlement, being unable to pay the amount, did in part discharge thereof, sell by parol to her said testator, a lot in Louisville, designated in the new plan of the said town, by No. 23: That her testator entered upon and possessed the said lot, occupied it during his life, devised it to her, and that she has occupied and possessed it ever since, and still possesses it: That Bell devised the real estate to his brother and sister, who devised to their nephews, who, and their heirs and devisees, she made, defendants to her bill. The defendants were alledged to be non-residents, after order of publication, and publication thereof duly made, as the court say. They decreed for *564 the complainant, that a conveyance of the said lot should be made to her, and appointed a commissioner to make the same — who, having made the saíne, it was acknowledged and recorded, and the court, on the 8th day of November, 1809, by a final decree affirmed the acts of the commissioner and the conveyance made by him, and pronounced the title of the said lot to be thereby, and the previous proceedings had in said cause, vested in said complainant, and ijecreed costs against the defendants. To reverse which decree, the plajqtiffs in efror sued out, in December, 1816, this writ of error against the heirs of the said Jane, she liaving departed this life, and assigned for error — 1st. That the allegations of the bill do not warrant a decree in favor of the complainants: 2d. That the contract alledged in the bill is one on which no suit in law or equity will lie, it being within and contrary to the statute of frauds: ⅜1. The record does not shew that the order of publication was advertised according to law, nor does it exhibit a case proper for such a proceeding: 4th. It was erroneous to take a decree against the infant defendants, without giving them day to shew cause against it: 5tlt. The court had no jurisdiction of the case.
The third and fourth assignments are not verified by the record. It does not appear that any of the defendants were infants; and the record recites, that the order was duly published, and that the bill was regularly taken for confessed. The fifth has nothing in it- — -to decree the specific execution of contracts for land, is peculiarly and exclusively the province of Use chancellor. Whether the contract in the present case, was one of which the chancellor could decree the specific performance, remains to be examined, and is the question involved in the first and second assignments, until the statute of frauds took effect, (which was on the 1st day of January, 1787,) a parol contract for the purchase and sale of land, was valid and obligatory upon the parties, and would be enforced by the chancellor, with the same alacrity and upon the same principles that h,e would enforce a written contract, on the same subject.— The chancellor, unhampered by statute, and left to the exercise of his appropriate jurisdiction, enforces or refuses to enforce contracts, as conscience, regarding the social and moral duties, shall, upon a full and just view of the subject matter, dictate. jy parol is as binding in conscience, as a written contract — and the parties thereto as much bound *565 in conscience in the one as the other, and Iherefore they were regarded in the same light by the chancellor.
The contract in the present case was by parol, and if made subsequent to the 1st day of January, 1787, being a contract for land, must be considered as against the statute aforesaid, and void. When it was made, is not stated with precision. It was made during the four years from 1783 to 1787, inclusive, in which of them is left to conjecture. Whether the word inclusive should be construed to embrace the last of those rears only, or the first and last, or all of them, is not sufficiently clear; but construed to import either, the doubt still remains, and could only be removed by construing it to include the first and exclude the last. The import of the preposition to, used in connection with the last, if it were not for the import of the word from, used in like connection with the first clause of the sentence, would seem to favor this construction; but those two prepositions are opposed to. this construction, and their might cannot be well resisted. Upon the supposition, therefore, that the year ’87 must be included in the period of the four years, during which this contract was made, it remains to be enquired, whether it must be taken to Slave been made in the last, or may not have been made in one of the three preceding years. Why not fix upon the central or middle period? ''•Jn medio iutisshnusf isa sensible and a safe adage. If that be taken as the period, or if one fourth of the whole be added thereto, and wc suppose it to have been made at the end of the third year, the contract, as we have seen, was valid and might be enforced. When we add that this contract has been ratified by possession in the complainant, and asquiescence on the part of the defendants, for near forty years, we are the more inclined to this construction. We think it is not enough that the chancellor should dmbt as to the validity of such a contract, consecrated by such a length of possession and acquiescence therein. He should be certain that it was void, before lie should vacate it. A shorter period of posession would, in morcases, bar a recovery in a possessory action, and in some cases invest the possessor with the absolute right; or what is equivalent thereto, bar a recovery upon the mere right. A possession of thirty years, pursuant to a deed, dispenses with proof of the deed. How can we then, regarding the reason of these favorite doctrines of the law, intend that a contract Riad? near forty years ago, was void, *566 anj overturn a possession of that length; and thereby di» ves* ^le occupants of their ancestral rights — -possessory at feast? Particularly when the contract is not alledged to have been intrinsically vicious, but was then and is now intrinsically valid, at the bar of conscience, and could be considered as void only upon supervenient principles of public policy, if it. were by intendment brought within the scope of the statutory shape of that policy? We cannot intend that the contract in this ease was made in the year 1787. It is quite as rational to suppose it to have been been made in the year immediately preceding, and more consonant with the benign doctrines of the law, in relalion-to antique transactions and long possession connected therewith. The facts alledged in the hill are sufficient to sus» tain a decree, and being confessed, ibe decree therein cannot be disturbed. The proceedings, though not formally regular, are substantially so.
The decree must, therefore, be affirmed with costs.